UNITED STATES, Appellee

v.

ROBERT D. GLAZE, Private E–1, U. S. Army, Appellant

3 USCMA 168, 11 CMR 168

No. 2078

Decided July 31, 1953

Col Stanley W. Jones, U. S. Army, Lt Col George E. Mickel, U. S. Army, 1st Lt Wade J. Dahood, U. S. Army, and 1st Lt R. M. Hartsock, U. S. Army, for Appellant.

Col Allan R. Browne, U. S. Army, Lt Col Thayer Chapman, U. S. Army, Lt Col William R. Ward, U. S. Army, and 1st Lt Martin Blackman, U. S. Army, for Appellee.

## Opinion of the Court

George W. Latimer, Judge:

The accused was charged with, and found guilty by a general court-martial of, two specifications in violation of Article 91, Uniform Code of Military Justice, 50 USC § 685. For purposes of clarity we set forth the particular specifications:

"Specification 1: In that Private Robert D. Glaze . . . having received a lawful order from Sergeant First Class Amos M. Jones, his superior non-commissioned officer, to leave the kitchen supply tent, did, at Inje, Korea, on or about 18 May 1952, wilfully disobey the same.

"Specification 2: In that Private Robert D. Glaze . . . did, at Inje, Korea, on or about 18 May 1952, assault Sergeant First Class Amos M. Jones, his superior non-commissioned officer, who was then in the execution of his office, by striking and kicking him on the head with his fist and feet."

The court-martial sentenced the accused to a dishonorable discharge, total forfeitures, and confinement for thirty years. Reviewing authorities reduced the confinement to five years, but otherwise affirmed. We granted the accused's petition to determine the following three questions:

1. Whether a Judge Advocate General's Corps officer is disqualified to act as a member of a court-martial.

2. Whether the evidence is sufficient to show Sergeant Jones was in the execution of his office, under specification 2.

3. Whether the evidence is sufficient to support the findings of guilty under specification 1.

Generally, the evidence shows that on the day in question, Sergeant Jones, along with two other sergeants, was in the kitchen supply tent having a few drinks to celebrate the departure of old members and arrival of new members of the unit. Jones was in charge of the supply tent and, for reasons which are immaterial to this decision, the company commander had instructed him not to permit the accused in the tent. On the day in question the accused entered and Jones told him that he would have to leave. The accused refused and demanded a drink from Jones, but the demand was refused. Finally, one of the others present suggested that if Jones was to give him a drink he might leave. Jones agreed with the understanding that the accused would leave immediately thereafter. After having consumed his drink, the accused remained and Jones again told him he would have to leave. This apparently incensed the accused who then informed Jones they were going to fight and he thereupon stuck Jones in the face with his fist. Jones overcame the accused, held him down, and informed him he would let him up if he would leave the tent. The accused once again agreed to depart. Jones released him and started to walk away but was struck on the side of the head by the accused. He fell to the ground and the accused kicked him in the face several times.

## I

The first question arises because one of the members of the court-martial which tried the accused ■■■■■■■ was Lieutenant Colonel James Bishop who was a member of the Judge Advocate General's Corps. The original special orders constituting the membership of the court-martial were issued on May 14, 1952, and they did not list Bishop as being one of the members. On May 24, 1952, a special order was issued appointing him to the court in the place of one of the original officers who was relieved. The trial of the accused was held on May 27, 1952. At that time the usual proceedings were held with respect to the qualification of court members and defense counsel was asked if there were any challenges for cause. He replied there were none and he then announced he did not care to exercise his right to a peremptory challenge.

Defendant contends that Colonel Bishop was not qualified to sit as a member of the court solely because he was assigned to the Judge Advocate General's Corps. We cannot agree. It is within the powers of Congress to prescribe the qualifications for members of a court-martial and we cannot add to or detract from those qualifications. Congress announced those qualifications in Article 25 (a) of the Uniform Code of Military Justice, 50 USC § 589. It provides "Any officer on active duty with the armed forces shall be eligible to serve on all courts-martial." There were no exceptions carved out in spite of the fact that certain members of Congress were apprised of the all-inclusive coverage of that Article. In the hearing before the subcommittee of the Committee on Armed Services of the House of Representatives, on the Uniform Code of Military Justice, the possibility of members of The Judge Advocate General's Corps sitting as members of a court-martial was discussed and there was no attempt made to disqualify them. On page 1153 of the House hearings on H. R. 2498, the following colloquy is reported:

"MR. DEGRAFFENRIED. There is nothing in here that prevents the lawyer who is not the law officer from serving on the courts, is there? You might have an officer there or some member of the court or even two or three members of the court who are lawyers themselves.

"MR. LARKIN: That is right."

But more illuminating on the question of Congressional intent to permit lawyers to serve is the fact that Congress, in the Uniform Code of Military Justice, only disqualified those lawyers

who had some official connection with the case. Article 6(c), 50 USC § 556, provides:

"No person who has acted as member. . . . in any case shall subsequently act as a staff judge advocate or legal officer to any reviewing authority upon the same case."

There would have been no necessity to disqualify a member of the court from becoming the staff judge advocate to review a case if lawyers assigned to that Corps were disqualified from being members of courts-martial. Moreover, the wording of the Manual indicates quite conclusively that it was contemplated officers of the Judge Advocate General's Corps could sit as members. In stating the many grounds for challenging a member of the court-martial, the Manual (paragraph 62f) sets out the following:

"(11) That he has acted in the same case as the convening authority or as the legal officer or staff judge advocate to the convening authority.

"(12) That he will act in the same case as the reviewing authority (84) or as the legal officer or staff judge advocate to the reviewing authority (85a)."

Again, there would have been no need to mention this disqualification if, in the first instance, members of the Corps were not permitted to participate in the deliberations of the court-martial.

Another good reason why accused's first contention must be overruled is that he waived his right to challenge the member. The orders appointing Colonel Bishop were issued on May 24, 1952. They disclosed that he was a member of the Judge Advocate General's Corps. He was the only officer mentioned in the order and a cursory glance would show his branch of the service. Counsel for accused was afforded an opportunity to question the officer on his qualifications and when he was asked concerning his desire to exercise a challenge he waived those available for cause and the one available peremptorily. For the purpose of announcing a rule on waiver, we adopt the general rule announced in civilian cases. It is well expressed in the following language found in 31 American Jurisprudence, Jury, section 119:

"The general rule is that objection to a juror because of his disqualification is waived by failure to object to such juror until after verdict, whether in a civil or a criminal case, and even with respect to a statutory qualification. Even in a capital case the disqualification of a juror is generally unavailable after verdict. The general rule stated is of special force where it appears that the party complaining was aware of the objection to the juror at the time of the impaneling of the jury, or where such objection could have been discovered by the exercise of ordinary diligence, and it does not appear on the whole case that injustice resulted . . . ."

Petitioner next asserts that his contention must be supported by us because the presence of a member of the Judge Advocate General's Corps on the court-martial would contravene the theory of general prejudice as developed in the cases of United States v. Bobby L. Keith (No. 226), 1 USCMA 442, 4 CMR 34, decided July 3, 1952, and United States v. Woods and Duffer (No. 1023), 2 USCMA 203, 8 CMR 3, decided February 19, 1953. That theory is not applicable here as the two situations are poles apart. It is one matter to have a law officer, whose instructions the court is, by statute, required to follow, and who is directed not to consult with the members of the court except in the presence of the accused, participate in the deliberations of the court-martial, and another to have a lawyer deliberate as a member of the court when he is on the same footing as other members. One of the primary purposes of the Uniform Code of Military Justice was to make the law officer the judge of the trial and require the court to follow his instruction. The lawyer who is a member of the court has no such power and authority. Moreover, the presence of a lawyer as a member of the court is neither in violation of any act of Congress nor

contrary to the ordinary concepts of justice. Even in those jurisdictions which have legislation dealing with lawyers, the rule is generally that they are not disqualified; rather they are given an exemption which they must claim or they serve.

There is nothing inherently unfair or prejudicial to an accused in permitting a member of the Judge Advocate General's Corps to participate as a member of the court-martial. They are in all respects as capable of applying the facts of a given case to the law announced by a judge as is anyone else and they ofttimes require a higher degree of proof of guilt than does a layman. The argument that a lawyer may apply his own law might be directed to Congress but it does not create a valid basis for disqualification by us, for this is an argument which can do no more than raise a question of policy. Accordingly, the first assigned error is overruled.

## II

For his second point the petitioner states the findings of guilty of the second specification must be reversed because the evidence does not show that Sergeant Jones was in the execution of his office at the time of the assault. In determining the scope of the phrase "in the execution of his office," it is stated in Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, at page 571:

".  .  . an officer may be in the execution of his office without being on duty in the strictly military sense, and a more accurate definition of the phrase is believed to be—in the performance of an act or duty either pertaining or incident to his office, or legal and appropriate for an officer of his rank and office to perform. An officer is deemed to be in the execution of his office when engaged in any act or service required or authorized to be done by him, by statute, regulation, the order of a superior, or military usage. It is not *essential* that the act should be one pertaining to his special branch of duty: thus any officer engaged in quelling a fray or disorder under the provisions of Art. 24 would properly be regarded as 'in the execution of his office'. .  .  ."

Adopting the test laid down in the foregoing quotation it follows that Jones was in the execution of his office. He was the mess sergeant at the time of the incident and as such was responsible for order and discipline in the supply tent at all times. He had been expressly directed by the company commander to refuse the accused admission to the tent. At the time of the incident, Jones was having some drinks with some other soldiers but this did not relieve him of the duties which had been imposed upon him. So long as he was carrying out those duties at the time of the incident, it matters not that he was fraternizing with other noncommissioned officers. He slept in the supply tent, was physically there most of the time, and his responsibility to maintain order and keep the accused out was always present. He was not just required to perform those duties between certain hours, but he was charged with responsibility of complying with the orders given to him at all hours of the day and night. At the time of the assault he was attempting to do as he was ordered by his company commander. But more than that his assignment carries with it certain responsibilities imposed on him by Army regulations and one of those requires that he control and operate the mess. Inherent in that imposed duty is the authority to maintain order and discipline therein, including the storeroom. It was largely because of his attempt to carry out the duties of his office that he received the beating and we find no evidence to show that in ordering the accused from the tent he had exceeded the authority given to him.

While we have discussed the matter as being one of law, the question of whether Jones was in the execution of his office was squarely presented to the court-martial as a factual matter. By appropriate instructions the law officer informed the court members that if they found Sergeant Jones was not in the execution of his office at the time

he issued the order, the accused could not be found guilty of the offense charged. The court-martial resolved that question against the accused, and we have pointed out why the finding is supported by the record.

### III

Petitioner finally asserts that the evidence is insufficient to sustain the finding of guilty of specification 1 because there was no order given by Sergeant Jones; that at best his statements merely constituted a request to leave the supply tent. The law has long been that the form of the order is immaterial, so long as it is understood by the accused, and, furthermore, the mere fact that it is phrased in precatory form does not necessarily render it less than a positive command. Paragraph 169b, Manual for Courts-Martial, United States, 1951. Perhaps by relating the various admonitions, entreaties, and orders chronologically we can best illustrate why there was an order which was understood by the accused as such. Jones testified that upon the accused's arrival at the supply tent he told him "Glaze, you can't stay in here. You know how the old man feels about it." He later stated, "Glaze, I thought you was leaving. Instead, you sit down and make yourself at home. We are going to have to clear out of here. It is almost chow time." After the first fracas, and Jones had overpowered the accused, he told him, "I don't want any trouble with you. I will turn you loose if you will get up and out of here." The accused then replied, "OK, I will go." Jones stated on cross-examination that he did not expressly order the accused out of the tent because he was "trying to be halfway decent to him," but the substance of what he said and did amounts to a positive demand to leave. Furthermore, a corporal who was present part of the time testified Jones directed the accused to leave on at least two separate occasions. The accused replied that he would do so but did not. It is clear the accused understood that he was refusing to comply with positive directions to leave the tent. While testifying on his own behalf, he admitted that he had heard Jones tell him to leave the tent and upon being asked whether he knew he was supposed to leave the tent, he replied, "Yes, sir." His resentment which found an outlet in his abuse of the sergeant speaks loudly that he objected to being ordered to leave.

Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

BROSMAN, Judge (concurring in the result):

I concur in the result. I would concur outright but for the majority opinion's language on the subject of waiver by the accused of any right he may have possessed to challenge Colonel Bishop for cause.

I agree fully with my brothers that this officer's membership in the Judge Advocate General's Corps does not under the law exclude him from membership or service on a court-martial. I need go no further than this, and I prefer not to do so. See Manual for Courts-Martial, United States, 1951, paragraphs 62d, 62f, 62h(2). See also my separate opinion in United States v. Charles E. Smith (No. 486), 2 USCMA 440, 9 CMR 70, decided May 5, 1953.