UNITED STATES

v.

Willie Lee BROWN, 431 11 5181, Seaman Recruit (E-1), U. S. Navy.

NCM 76 1788.

U. S. Navy Court of Military Review.

Sentence Adjudged 22 April 1976.

Decided 23 Feb. 1977.

LT H. Glenn Scammel, JAGC, USNR, Appellate Defense Counsel.

CAPT Mark M. Humble, USMCR, Appellate Government Counsel.

Before CEDARBURG, C. J., and BAUM and GLASGOW, JJ.

CEDARBURG, Chief Judge:

Contrary to his pleas, appellant was found guilty of assault, communication of a threat, and two counts of failure to obey a

lawful order, in violation of Articles 128, 134, and 92, UCMJ, 10 U.S.C. §§ 928, 934, 92. The special court-martial with members sentenced appellant to forfeiture of $240.80 pay per month for six months, confinement at hard labor for six months, and a bad conduct discharge. The supervisory authority approved only so much of this sentence, approved by the convening authority, as provided for forfeiture of $240.00 pay per month for four months, confinement at hard labor for four months, and a bad conduct discharge.

Appellant has assigned the following as errors:

I. THE MILITARY JUDGE ERRONEOUSLY FAILED TO EXCUSE A COURT MEMBER DISQUALIFIED BY LAW ENFORCEMENT DUTIES.

II. THE MILITARY JUDGE DEPARTED FROM HIS IMPARTIAL JUDICIAL ROLE BY INSTRUCTING TRIAL DEFENSE COUNSEL AS TO SPECIFIC QUESTIONS TO BE ASKED OF APPELLANT UNDER OATH.

III. THE MILITARY JUDGE ERRONEOUSLY AND PREJUDICIALLY COMPELLED THE EXTRACTION OF SELF–INCRIMINATORY TESTIMONY FROM APPELLANT.

I

During *voir dire,* one of the detailed court members, Lieutenant K., revealed in response to general questioning by the military judge directed to all members, that he was assigned duties as security officer for the Naval Support Activity, Seattle. Additional general questions designed to determine prejudice, bias, preconceived ideas of guilt, appropriate punishment and general competence to serve as court members were asked with no disqualifying revelation being made. In response to specific questions of the defense counsel, Lieutenant K. established he had no specific knowledge regarding appellant as a result of his security duties or his activities as a Command Duty Officer. Neither did his answers regarding his past experience in taking a course in constitutional law pose any problem of serving as a court member. In short, the *voir dire* revealed no specific disqualifying circumstances. Citing *United States v. Hedges,* 11 U.S.C.M.A. 642, 29 C.M.R. 458 (1960); *United States v. Hampton,* 50 C.M.R. 232 (A.C.M.R.1975); *United States v. Karnes,* 23 U.S.C.M.A. 537, 50 C.M.R. 708, 1 M.J. 92 (1975) and *United States v. Cleveland,* 15 U.S.C.M.A. 213, 35 C.M.R. 185 (1965), appellant contends the military judge erroneously failed to excuse a court member disqualified by law enforcement duties.

■ The sole question is whether Lieutenant K.'s assignment to duties as a "security officer" rendered him disqualified. We are aware of no case law which dictates that conclusion. The cases cited by appellant do not require it nor are they particularly persuasive that serving as a "security officer" is inherently, or by appearance, disqualifying. The term "security officer" is amorphous as applied in the Navy. Some security officers have substantial police duties. Others have virtually no "police duties", being essentially administrative officers. Thus, the term does not automatically conjure up an "appearance of evil" when considered in relation to court-martial service. The defense chose neither to exercise a challenge for cause nor a peremptory challenge, indicative of their perception of a lack of disqualification.

■ The record in this case does not disclose any of the specific grounds provided in paragraph 62f, *Manual for Courts-Martial, United States, 1969* (Revised edition) for which excusal upon disclosure is mandated by par. 62c, *Manual, supra,* without necessity for challenge by either side. The normal procedure where these specific grounds are not disclosed is challenged by one of the litigants under clause 13 of paragraph 62f, *supra,* on the basis that under the particular circumstances a member should not sit in the interests of legality, fairness and impartiality. In a proper case, the military judge can, *sua sponte,* excuse a prospective member even though a ground of automatic

disqualification has not been disclosed. *United States v. Seabrooks,* 48 C.M.R. 471 (N.C.M.R.1974); *United States v. Jones,* 7 U.S.C.M.A. 283, 22 C.M.R. 73 (1956); *United States v. Lowman,* 1 M.J. 1149 (N.C.M.R. 1977). Nothing in the case before us requires a departure from the normal procedure or constitutes an abuse of discretion by the military judge in not exercising a challenge to Lieutenant K. on his own initiative.

■ During an Article 39(a) session held just prior to completion of the prosecution's case, trial defense counsel informed the military judge:

> On several occasions I have carefully delineated to the defendant his right to introduce evidence on his own behalf and to call witnesses, and to testify in his own behalf. Seaman Recruit Brown has indicated to me a desire to testify on his own behalf. However, Seaman Recruit Brown has seen fit to not discuss the details of that statement with me, his defense counsel. I have advised Seaman Recruit Brown that I do not feel it is in his best interest to make a sworn statement on the merits without discussing the details with me. I have specifically advised Seaman Recruit Brown that there is a possibility that he could incriminate himself, make a judicial confession. Seaman Recruit Brown has nevertheless decided he wants to proceed with making this sworn statement without discussing the substance of the statement with me . . . . [R. 108, 109].

Upon trial defense counsel's request, the military judge advised appellant against pursuing this course of action. [R. 109–113]. Appellant, nevertheless, insisted upon testifying in his own behalf without first discussing with his counsel what he intended to say in open court.

Further background is appropriate. The record contains a letter from appellant's trial defense counsel to the convening authority prior to trial requesting a psychiatric evaluation of appellant. As justification, appellant's refusal to talk about the impending charges with his attorney or re-

quest any other military attorney was cited along with what was termed a "vague distrust of military lawyers." [Parenthetically, we are satisfied that the military judge's extensive advice regarding appellant's rights to counsel established appellant's understanding of his rights and his desire to proceed to trial with his appointed defense counsel and no other counsel, military or individually retained civilian.] Appellant was examined by the dispensary psychiatrist who, in two separate memoranda, stated his opinion of appellant's competence to stand trial, specifically, his ability to distinguish right from wrong and to adhere to the right, his capability to understand the charges and to participate in his defense. Significantly, the psychiatrist stated appellant was overly mistrustful and, as a way of protest, was not being cooperative with the judicial system.

In accordance with the repeatedly expressed wishes of appellant, trial defense counsel called appellant to the stand and, after he was sworn, in a very general manner attempted to elicit his testimony. [R. 117]. Appellant then commenced the scornful and belittling responses which were to characterize his conduct on the witness stand and in sessions before the military judge outside the hearing of the court members. His conduct provides confirmation of his intent to obstruct the functioning of the judicial system as a way of protest.

The military judge, after determining that appellant wanted to tell his version of the incidents on which the charges were based, suggested that trial defense counsel ask his client: "Is there anything you would like the court to know about any of the specifications?" [R. 117]. This question was put to appellant; he answered in the affirmative. Trial defense counsel again invited him to make his statement to the court; and, again, appellant declined to do so, stating, "Ah, well, there's really not too much I can say. There's no way, you know, really no one asked me any questions." [R. 118]. Another Article 39(a) session was called and appellant reiterated

that it was his intention to answer questions concerning all of the offenses but only in response to questions.

As a consequence, trial defense counsel stated for the record:

[T]he defendant has not supplied me with details as to the specifications during the recess, and in view of the fact that I have no knowledge as to the details surrounding these specifications, that is, the defendant's version, I do not desire to conduct a direct examination of the defendant. [R. 123].

The military judge had given elaborate and detailed advice to appellant regarding testimonial procedures and emphasized that appellant would subject himself to questioning by the prosecutor and risk saying something he should not say [which appellant paraphrased as "incriminating myself"] only if he chose to testify. He pointedly questioned appellant and received assurances that there was no charged incident about which he did not desire to testify. In view of appellant's consistent, oft-repeated assertion of his desire to testify but, irascibly and as a result of a calculated decision, only in response to questions, the military judge instructed trial defense counsel as follows:

MJ: Very well. Lieutenant S, I am certainly sympathetic to the problem you are having. I think under the circumstances your client is entitled to present the information by way of question and answer. I think that it would be possible to direct his attention to the specific incidents concerning which he is charged, to ask general non-leading questions of the same type you would ask any other witness concerning who did what and in what order. As I say, while I am sympathetic to your desire not to be in that position, under the circumstances I feel you have no choice. I will require you to put those questions to him. [R. 123].

Defense counsel thereupon directed appellant's attention to the incidents from which the charges stemmed by referring to the dates and persons alleged in the specifications and asked appellant in general what

had happened. Appellant's responses were indicative of his intention to frustrate the efforts of the military judge and his own counsel to assure he was accorded his right to testify in his own behalf. The military judge thereupon suggested to defense counsel a more specific approach which was followed by defense counsel.

The military judge and appellant's defense counsel were faced with a difficult problem which had its genesis in appellant's calculated determination to sabotage the orderly judicial proceedings in his case. The record amply supports appellant's invocation of his absolute right to testify, no matter how unwise that decision, made by himself alone, and without the advantage of the advice of his legal counsel, may have been. The record also supports his desire to testify regarding all of the incidents from which the charges arose. Whether his decision was motivated by a desire to demonstrate, through his mocking responses, hostility towards the Navy, the system of military justice or for whatever reason, the fact is not altered that he chose to exercise his right to testify. Under the circumstances, we are unable to ascribe his decision to testify, with the potential for prejudicing his case inherent therein, to a lack of understanding of either his testimonial rights or of the danger of his testifying without discussing his testimony with his counsel.

The actions of the military judge, in initially directing defense counsel to ask general questions and when that procedure proved fruitless, suggesting more direct questioning to appellant's testimony under the perverse restriction imposed by the appellant himself, were deliberately induced by appellant. The course of action chosen by the military judge may not have been the wisest one under the circumstances with which he was confronted, nor one which we would recommend to other judges similarly vexed. It was, however, consistent with appellant's repeatedly elaborated desires, which he had a right to assert. We find no prejudice which can be imputed to the action of the military judge. Judge Baum, in his concurring opinion in *United States v.*

*Hedlund and Reed,* No. 75 1083 and No. 75 1210, —— M.J. —— (N.C.M.R. 3 February 1977), recently had occasion to cite an opinion of Judge Learned Hand in *United States v. Paglia,* 190 F.2d 445, 447, 448 (2nd Cir. 1951). Pertinent to the case at bar, part of Judge Hand's opinion bears repeating. "Justice is not a game; there is no constitutional right to 'throw dust in a juryman's eyes, or hoodwink a judge who is not overwise.'" That is precisely what appellant sought to do in the present case. To permit him to frustrate the ends of justice by his own mischief would only invite others to emulate his success to the detriment of the entire system of criminal justice.

The findings and sentence as approved on review below are affirmed.

Judge BAUM and Judge GLASGOW concur.