**UNITED STATES of America**

v.

**Kenneth R. MORRISON II, Midshipman First Class (Midn 1/C), U.S. Navy.**

**NMCCA 200700647.**

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 10 April 2007.

6 March 2008.

For Appellant: William M. Ferris, Civilian Appellate Defense Counsel; Maj Brian Jackson, USMC.

For Appellee: LT Justin Dunlap, JAGC, USN.

Before GEISER, Senior Judge, KELLY, and COUCH, Appellate Military Judges.

## PUBLISHED OPINION OF THE COURT

GEISER, Senior Judge.

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of conduct unbecoming an officer and indecent assault, in violation of Articles 133 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 933 and 934. The appellant was sentenced to confinement for two years and a dismissal. The convening authority (CA) approved the sentence as adjudged.

We have considered the record of trial, the appellant's two assignments of error,[1] and the Government's response. We conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c). We will address the appellant's assignments of error in reverse order.

### Unlawful Command Influence (Member–Stacking)

The essence of the appellant's allegation is that the CA systematically and improperly excluded junior officers from consideration to serve as members of the appellant's court-martial based solely on their rank.

### Background

The appellant was originally charged in a special court-martial proceeding with, *inter alia,* the same charges and specifications of which he was ultimately found guilty at this general court-martial. As part of that earlier proceeding, a previous military judge

ruled that there was the appearance of unlawful command influence (UCI) in the member selection process. As a remedy, he ordered expanded preemptory strikes and liberal voir dire. Although the military judge presiding at the appellant's general court-martial indicated that he disagreed with that ruling, the remedy was nonetheless applied giving the appellant two peremptory challenges as opposed to one.

The original general court-martial convening order number 1–07 dated 18 January 2007 and the amended general court-martial convening order number 1–07A dated 9 March 2007, collectively listed 15 prospective court members. These included five 0–6s, four 0–5s, four 0–4s, and two 0–3s.[2] Following voir dire and challenges, the court membership was reduced to two 0–6s and two 0–4s. Record at 392. The minimum number of members for a general court-martial is five. The following day, the CA issued general court-martial amending order 1–07B, dated 03 April 2007, detailing five additional officers to the pool of prospective members. These officers—four 0–5s and one 0–4—were all successfully challenged for cause. Later that same day, the CA issued general court-martial amending order 1–07C, dated 03 April 2007, detailing ten additional officers to the pool of prospective members. These included one 0–6, five 0–5s, and four 0–4s. Of these, one 0–6, one 0–5, and one 0–4 survived various challenges and were seated as court members. Record at 701. The final court membership consisted of three 0–6s, one 0–5, and three 0–4s.

Following voir dire and challenges, the defense raised an objection to "the way that members were nominated" for the proceeding. *Id.* at 703. The civilian defense counsel (CDC), recollecting his days at the United States Naval Academy (USNA), opined that "very close to half" of the 400 officers assigned to the Academy are 0–3s and below. *Id.* The civilian defense counsel objected to

---

1. I. Whether the evidence adduced at trial was sufficient to support the findings of guilt.

 II. Whether the detailing of members to the trial of this case was so clearly designed to produce an unfair result as to require a new trial.

2. The officer rank references are as follows: 0–6s (Captain (USN)/Colonel), 0–5s (Commander/Lieutenant Colonel), 0–4s (Lieutenant Commander/Major), and 0–3s (Lieutenant/Captain (USMC)).

the "relative seniority" of the officers detailed to the court. *Id.* at 704. He stated that "it has the appearance it was done deliberately." *Id.*

The military judge immediately inquired if the defense had filed for "application of the Article 25 criteria."[3] *Id.* The CDC stated that they had not done so. The CDC went on to state that he was "not asking the court to even rule on a motion at this point" but was just trying to place his concerns "on the record." *Id.* The military judge pressed the CDC, asking if the defense had any evidence of purposeful jury-stacking or improper motives on the part of the CA. The CDC responded that he did not. *Id.* at 705. The military judge pointed out that application of the Article 25 criteria of age and experience would normally default to having a more senior panel. The CDC acknowledged that the military judge's observation was correct but, without offering any evidence, went on to generally characterize the detailing process as having been manipulated.

Obviously perplexed, the military judge attempted to ascertain to what specifically the CDC was objecting. The military judge asked if the CDC was saying that he "wanted more Lieutenants" on the court. The CDC disavowed any particular interest in having lieutenants on the court and said he was not suggesting any sort of collusion between the CA and the prosecution, but that he simply wanted his concerns entered into the record. The military judge observed that, as there was no motion before the court and the defense had no evidence of collusion or improper detailing to offer, they would move on with the case. *Id.* at 708.

## Discussion

■■■■ A court-martial may not be purposefully "stacked" to achieve a desired result and officers, otherwise eligible to serve, may not be excluded from service based solely on their rank. *See United States v. Hilow,* 32 M.J. 439, 440 (C.M.A.1991); *United States v. Smith,* 27 M.J. 242 (C.M.A.1988); *United States v. Crawford,* 35 C.M.R. 3, 12, 1964 WL 4914 (C.M.A.1964). Court-packing does not

deprive the court-martial of jurisdiction, but is a form of UCI. *United States v. Lewis,* 46 M.J. 338, 341 (C.A.A.F.1997).

■■■■ While a CA may not select court members to achieve a desired result, or exclude eligible members based on rank alone, a military accused is not entitled to have a representative cross-section of the community detailed to his or her court-martial. *United States v. White,* 48 M.J. 251, 253 (C.A.A.F. 1998). Article 25(d), UCMJ, 10 U.S.C. § 825(d), requires a CA to select court-martial members who, "in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." It is permissible for a CA to look first at more senior officers for qualified court members; however, he may not systematically exclude lower ranking eligible officers from consideration. *See Crawford,* 35 C.M.R. at 12.

The phrasing of the appellant's reiterated argument on appeal co-mingles the two important aspects of UCI—reality and appearance. We agree with the Army Court of Criminal Appeals that we begin our consideration of whether actual UCI existed with a presumption that the CA acted in good faith and applied the Article 25(d) criteria conscientiously. *United States v. Carman,* 19 M.J. 932, 936 (A.C.M.R.1985). The burden of presenting sufficient evidence to raise the issue of actual UCI rests with the appellant. The threshold for raising the issue of UCI at trial is low, but requires more than mere allegation or speculation. *United States v. Biagase,* 50 M.J. 143, 150 (C.A.A.F.1999) (citations omitted).

In view of the pernicious nature of UCI and the potential harm it poses to the public's perception of the integrity of the military justice system, it is not enough that the CA did not actually engage in UCI. He is also obligated not to act in a manner that creates a reasonable appearance of UCI. Thus, beyond actual UCI, we must also be convinced beyond a reasonable doubt that a reasonable person with knowledge of the rel-

---

**3.** Article 25(d), UCMJ, requires a CA to detail officers as prospective court members who "in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament."

evant facts would not perceive that the deck was unfairly stacked against this appellant. *See United States v. Hedges,* 29 C.M.R. 458, 458, 1960 WL 4531 (C.M.A.1960).

## Actual UCI

 While the appellant's burden to produce evidence is low, he must produce some evidence beyond mere speculative assertion that the CA must have acted from improper motives simply because the members detailed by the CA did not constitute a reasonable cross-section of the available qualified members. Appellant's Brief and Assignment of Errors of 21 Nov 2007 at 11–14. He has not done so.

The appellant offered no evidence at trial, and offers no evidence on appeal to support a claim of UCI or court-stacking. His assignment of error is grounded on nothing more than generic surprise that more lieutenants were not detailed to the court since so many of them are assigned to the USNA. As the Army court observed, "senior commissioned ... officers, as a class, are older, better educated, more experienced, and more thoroughly trained than their subordinates." *Carman,* 19 M.J. at 936. We mirror the military judge's observation that proper application of the Article 25(d) criteria would presumptively result in just such a senior body of members as was detailed to hear this felony general court-martial. Record at 705.

We have carefully examined the record of trial. We find no evidence whatsoever indicating that the CA was influenced by improper motives or that he otherwise did not conscientiously apply the Article 25(d) criteria when detailing members to this general court-martial. We, therefore, find no evidence of actual UCI in this instance.

## Perception of UCI

 This court-martial followed closely on the heels of a similar, but factually unrelated, case also involving a football player and allegations of sexual assault. Both cases were highly publicized in the Annapolis area and nationwide. As observed by the appellant during his unsworn statement, he'd seen "his name in every newspaper in the country" and on "all the TV reports." *Id.* at 1325. It is uncontested that this case did not promote a positive image of the USNA or the U.S. Navy as a whole.

Most, if not all, of the prospective members selected by the CA had read accounts of one or both of the cases, or had at the very least heard rumors about them. Although not all the members that were successfully challenged had involvement with witnesses or participants in the case, the fact that, of the 30 members detailed as prospective court members, only seven survived the voir dire and challenge process suggests the case's high visibility within the relatively small and insular Annapolis Navy community. Given this highly publicized environment, we must carefully examine the facts and circumstances of the case to determine if a reasonable person with knowledge of the relevant facts would believe that the member pool was unlawfully manipulated.

We first note that, contrary to the appellant's assertion that the CA purposefully excluded officers in the rank of 0–3 from consideration in order to achieve a particular result in the court-martial, the CA actually detailed two 0–3s to the pool of prospective members.[4] That they were subsequently successfully challenged for cause by the Government without objection from the defense is irrelevant to whether the convening authority purposefully excluded 0–3s from the member pool. Clearly, he did not. There is no evidence whatsoever to support the appellant's Machiavellian speculation that the particular lieutenants were "obviously" selected because they "had no possibility of being permitted to hear the case" due to their prior association with members of the defense team. Appellant's Brief of 21 Nov 2007 at 12.

We also note with approval the detailed voir dire process employed by the military judge and counsel. Questions of prior knowledge, relationships, and biases of the prospective court members were painstakingly vetted in both collective and individual voir

---

4. Lieutenant C.S. Sinclair was detailed to the court in General Court–Martial Convening Order 1–07 dated 18 Jan 2007 and Lieutenant J.W. Wyrick was subsequently detailed to the court in General Court–Martial Amending Order 1–07A dated 9 Mar 2007.

dire. The voir dire process extended for three days and collectively took up over 600 pages of transcript. Record at 66–701. We are satisfied that the seven officers who ultimately served on the court were well-qualified to do so. We further note that the seven members selected to serve found the appellant not guilty of one of the two allegations of sexual assault. This refutes the assertion and any perception that these members were "stacked" to obtain a specific result.

Post-trial, one member of the court, Major Mansfield, raised a question of "jury irregularity" during deliberations with a command staff judge advocate. Specifically, the major asserted that other members in the case did not follow the military judge's instructions in their deliberations. *Id.* at 1367. The judge advocate immediately made this communication known to the military judge, the parties and the CA. The military judge ordered an Article 39(a), UCMJ, session to take testimony and gather additional information.

Major Mansfield testified that no extraneous information was introduced into the deliberations, that no outside influence—to include relative rank—prevented a full and free discussion of the evidence, and that he noted no UCI. *Id.* at 1376–77.[5] Major Mansfield expressly disavowed the term "jury tampering" in favor of "jury irregularity." He defined this as "the method in which we ... undertook the deliberations ..." and further opined that his concern was his perception that one or more members were not impartial. *Id.* at 1383. He reiterated, however, that everyone was given an opportunity to talk and that the evidence was discussed.

We find that the Major's concerns over "irregularity" reflected his personal perception that members who viewed the evidence and circumstances differently from him or who brought a different set of personal experiences to the deliberations did so out of a

lack of impartiality as opposed to honest disagreement. We further find that Major Mansfield's assertion of "irregularity" involved the officers in the deliberation room and in no way suggested that the CA applied an improper set of criteria to the selection process. Having considered the totality of the facts and circumstances surrounding this case, we find beyond a reasonable doubt that a reasonable person with knowledge of the relevant facts would not perceive that UCI played a part in the detailing of members to this court-martial. Therefore, this assignment of error is without merit.

## Legal and Factual Sufficiency

■ The appellant's second assignment of error asserts that the evidence was both legally and factually insufficient to support a finding that the appellant was guilty of sexual assault or of conduct unbecoming an officer. The appellant does not contest that he had sexual intercourse with Midshipman W. His focus is on the issue of consent.

The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner,* 25 M.J. 324, 325 (C.M.A. 1987); *United States v. Reed,* 51 M.J. 559, 561–62 (N.M.Crim.Ct.App.1999), *aff'd,* 54 M.J. 37 (C.A.A.F.2000); *see also* Art. 66(c), UCMJ. The test for factual sufficiency is whether, after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. *Turner,* 25 M.J. at 325; *see also* Art. 66(c).

The appellant asserts that "it is inconceivable that a reasonable fact finder" could have found that Midshipman W did not consent to

**5.** MILITARY RULE OF EVIDENCE 606(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.), provides that a member may "not testify as to any matter or statement occurring during the course of the deliberations of the members of the court-martial or, to the effect of anything upon the member's or any other member's mind or emotions as influencing the member to assent to or dissent from the findings or sentence or concerning the

member's mental process in connection therewith, except that a member may testify on the question whether extraneous prejudicial information was improperly brought to the attention of the members of the court-martial, whether any outside influence was improperly brought to bear upon any member, or whether there was unlawful command influence."

his attentions. Appellant's Brief at 9. He points to the fact that the purported victim had been "drinking alcohol heavily," had "voluntarily kissed Appellant in the bedroom where she volunteered to go to bed with another man," had never "shouted out, screamed, or sought help even though she had ample opportunity to do so," and "having left the bed," voluntarily returned. *Id.* at 10. While this recitation of the evidence is accurate, it is incomplete.

The record also included testimony by Midshipman W that "I put my hands up around my waist to try to prevent him" from removing my pants. Record at 763. She further testified that my hands were "in between my legs, sort of to ... shield them and prevent him from having sex with me." *Id.* Throughout the initial sexual encounter, she testified that she repeatedly said "no" and "I can't." *Id.* After that, she testified that she went into a "state of shock" and that she felt "weak and kind of disoriented" and then passed out. *Id.* at 765. The evidence also established that she immediately reported the appellant's conduct the following morning, went to the medical clinic upon her return to USNA to have a "rape kit" done, and consistently asserted her lack of consent.

Reasonable doubt does not mean that the evidence must be free of conflict. *United States v. Rankin*, 63 M.J. 552, 557 (N.M.Ct. Crim.App.2006), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007). A fact-finder may accept or reject some or all of a witness' testimony. *United States v. Harris*, 8 M.J. 52, 59 (C.M.A.1979).

This court is convinced that a rational fact finder could have found the appellant guilty of these offenses. *See United States v. Izquierdo*, 51 M.J. 421, 423 (C.A.A.F.1999). We, too, are convinced beyond a reasonable doubt of the appellant's factual guilt to both Charge I (sexual assault) and Charge II (conduct unbecoming an officer).

The findings and the approved sentence are affirmed.

Judge KELLY and Judge COUCH concur.