UNITED STATES, Appellee,

v.

First Lieutenant Lydia R. RODRIQUEZ,
U.S. Air Force, Appellant.

No. 45317.
ACM 23545.

U.S. Court of Military Appeals.

Aug. 20, 1984.

For Appellant: *Captain Kathleen G. O'Reilly* (argued); *Colonel George R. Stevens* (on brief); *Colonel Leo L. Sergi.*

For Appellee: *Captain Kevin L. Daugherty* (argued); *Colonel Kenneth R. Rengert, Major George D. Cato* (on brief).

*Opinion of the Court*

FLETCHER, Judge:

On March 4, 1982, appellant was tried by a general court-martial composed of a military judge and members at Dyess Air Force Base, Texas. Contrary to her pleas, she was found guilty of five specifications of conduct to the prejudice of good order and discipline or to the discredit of the armed forces, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, and five specifications of conduct unbecoming an officer, in violation of Article 133, UCMJ, 10 U.S.C. § 933. She was sentenced to dismissal from the armed forces and forfeiture of $500.00 pay per month for 3 months. The convening authority approved this sentence. The United States Air Force Court of Military Review dismissed specification 5 of Charge I because of an instructional error. It affirmed the remaining findings of guilty, and, after reassessment of the sentence, affirmed the approved sentence.

This Court specified the following issue of law:

WHETHER SPECIFICATIONS 1 THROUGH 4 OF CHARGE I, ALLEGED AS VIOLATIONS OF ARTICLE 134, U.C.M.J., ARE MULTIPLICIOUS WITH THE SIMILARLY NUMBERED SPECIFICATIONS OF CHARGE II, ALLEGED AS VIOLATIONS OF ARTICLE 133, U.C.M.J.

We have considered this question in light of the decision of the Supreme Court in *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), and the decision of this Court in *United States v. Baker,* 14

M.J. 361 (C.M.A. 1983). We conclude that specifications 1 through 4 of Charge I must be dismissed since they are lesser-included offenses of specifications 1 through 4 of Charge II.

Resolution of a multiplicity-for-findings question begins with examination of the findings of guilty which are said to be multiplicious. *United States v. Baker, supra* at 368. In the present case appellant was found guilty, *inter alia*,[1] of the following charges and specifications:

Charge I: Violation of the Uniform Code of Military Justice, Article 134.

Specification 1: In that FIRST LIEUTENANT LYDIA R. RODRIQUEZ, United States Air Force, 96th Security Police Squadron, did, at Dyess Air Force Base, Texas, on or about 17 July 1981, wrongfully use marihuana.

Specification 2: In that FIRST LIEUTENANT LYDIA R. RODRIQUEZ, then SECOND LIEUTENANT, United States Air Force, 96th Security Police Squadron, did, at Dyess Air Force Base, Texas, on or about 15 May 1981, wrongfully possess marihuana.

Specification 3: In that FIRST LIEUTENANT LYDIA R. RODRIQUEZ, then SECOND LIEUTENANT, United States

Air Force, 96th Security Police Squadron, did, at Abilene, Texas, in about February 1981, wrongfully use marihuana.

Specification 4: In that FIRST LIEUTENANT LYDIA R. RODRIQUEZ, United States Air Force, 96th Security Police Squadron, did, at Dyess Air Force Base, Texas, in about July 1981, wrongfully commit an indecent, lewd, and lascivious act with Senior Airman Robert L. Bublitz by putting her hand on his groin and squeezing him.

CHARGE II: Violation of the Uniform Code of Military Justice, Article 133.

Specification 1: In that FIRST LIEUTENANT LYDIA R. RODRIQUEZ, United States Air Force, 96th Security Police Squadron, did, at Dyess Air Force Base, Texas, on or about 17 July 1981 engage in conduct unbecoming an officer, to wit: wrongfully using marihuana.

Specification 2: In that FIRST LIEUTENANT LYDIA R. RODRIQUEZ, then SECOND LIEUTENANT, United States Air Force, 96th Security Police Squadron, did, at Dyess Air Force Base, Texas, on or about 15 May 1981, engage in conduct unbecoming an officer, to wit: wrongfully possessing marihuana.

---

1. Appellant was found guilty under Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, of:

Specification 5: In that FIRST LIEUTENANT LYDIA R. RODRIQUEZ, SECOND LIEUTENANT until 18 June 1981, United States Air Force, 96th Security Police Squadron, did, willfully and knowingly, at Dyess Air Force Base, Texas, at divers times from about February, 1981, through October, 1981, fraternize and associate with various enlisted personnel on terms of military equality, to wit: solicit Staff Sergeant Hilda Martinez and Airman First Class Karen C. Sizemore to engage in indecent, lewd, and lascivious acts with First Lieutenant, formerly Second Lieutenant Lydia R. Rodriquez; unlawfully and wrongfully offering marihuana to various airmen in her squadron; unlawfully and wrongfully using marihuana in the presence of various airmen in her squadron; wrongfully embracing Staff Sergeant James T. Bumgarner and Senior Airman Robert L. Bublitz in the presence of other airmen; and wrongfully soliciting Senior Airman Robert L. Bublitz to engage in indecent, lewd, and lascivious acts with the said First Lieutenant, formerly Second Lieu-

tenant Lydia R. Rodriquez, in violation of the established customs and traditions of the armed forces that officers shall not fraternize or associate with enlisted personnel on terms of military equality, to the prejudice of good order and discipline in the armed forces of the United States or was of a nature to bring discredit upon the armed forces.

As indicated in the text of this opinion, the United States Air Force Court of Military Review dismissed this specification. Appellant was also found guilty under Article 133, UCMJ, 10 U.S.C. § 933, of:

Specification 5: In that FIRST LIEUTENANT LYDIA R. RODRIQUEZ, SECOND LIEUTENANT until 18 June 1981, United States Air Force, 96th Security Police Squadron, did, at Dyess Air Force Base, Texas, at divers times from February, 1981, through October, 1981, engage in conduct unbecoming an officer, to wit: soliciting enlisted personnel in her squadron to engage in indecent, lewd, and lascivious acts with the said First Lieutenant, formerly Second Lieutenant, Lydia R. Rodriquez and offering marihuana to various enlisted personnel in her squadron.

Specification 3: In that FIRST LIEU-TENANT LYDIA R. RODRIQUEZ, then SECOND LIEUTENANT, United States Air Force, 96th Security Police Squadron, did, at Abilene, Texas, in about February, 1981, engage in conduct unbecoming an officer, to wit: wrongfully using marihuana.

Specification 4: In that FIRST LIEU-TENANT LYDIA R. RODRIQUEZ, United States Air Force, 96th Security Police Squadron, did, at Dyess Air Force Base, Texas, in about July 1981, engage in conduct unbecoming an officer, to wit: wrongfully committing an indecent, lewd, and lascivious act with Senior Airman Robert L. Bublitz by putting her hand on his groin and squeezing him.

The Government called numerous witnesses who testified as to the occurrence of the charged offenses. The defense responded with witnesses of its own who contradicted to various degrees the Government's proof. Defense counsel stated in his closing argument that the central issue was the credibility of the government witnesses in terms of their motive for testifying and the inconsistency of their testimony. No real dispute existed between the parties on the question of the service-discrediting nature of the conduct if in fact it was found to have occurred.

The military judge provided the following instructions concerning findings as to Charge I:

With respect to Charge I, specifications 1, 2, and 3 allege a wrongful use, a wrongful possession, and an additional wrongful use of marihuana. Now, the elements of these offenses are essentially the same. First of all, that at the time and place alleged, and those alleged in each of the specifications, the accused either used or possessed marihuana. That's the first element. The second offense [sic] is that such use or possession by the accused was wrongful. And the third element is that under the circumstances the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Now, you are advised that in connection with the last element of the offense, to the prejudice of good order and discipline refers only to acts directly prejudicial to good order and discipline and not to acts which are prejudicial only in a remote or indirect sense. An irregular or improper act on the part of a member of the military service can scarcely be conceived which may not be regarded as in some indirect or remote sense prejudicing discipline. But Article 134 does not contemplate such distant effects and is confined to cases in which the prejudice is reasonably direct.

Discredit as used in Article 134 means to injure the reputation of. It refers to conduct which has a tendency to bring the service into disrepute or which tends to lower the public esteem.

In addition, he provided the following instructions concerning findings as to Charge II:

With respect to Charge II and the specifications thereunder, a number of the elements of those offenses are the same thing as they are in Charge I. If you will notice, Charge II essentially alleges that the acts as allegedly done in Charge I are acts which are unbecoming an officer.

With respect to specifications 1, 2, and 3 the elements are the same as I have told you earlier. That is first that the accused at the time and date alleged either used or possessed marihuana. Second, that such possession or use was wrongful. And in place of that third element which talked about discredit to the armed forces and was of a nature—excuse me, was prejudice to the good order and discipline of the armed forces, in place of that element you substitute the element, under the circumstances the accused's conduct was unbecoming an officer and gentlewoman. The language in our Manual talks about officer and gentleman. In

this case, I'm substituting the word, gentlewoman.

\* \* \* \* \* \*

Now, let me define that term for you. Conduct unbecoming an officer or [sic] gentlewoman means, action or behavior in an official capacity which in dishonoring or disgracing the individual as an officer seriously compromises her character as a gentlewoman, or action or behavior in an unofficial or private capacity which in dishonoring or disgracing the individual personally seriously compromises her standing as an officer.

The military judge also instructed the members concerning the relationship of these offenses for purposes of punishment, as follows:

Now, by your findings of guilty of all the specifications, I have determined as a matter of law that all of the specifications within Charge II are multiplicious with the specifications in Charge I. That is, they are the same conduct. In addition, I have determined that specification 5 is multiplicious with specifications 1 through 4 in Charge I since the offenses in specification 5 are the same things that the accused was convicted of doing in specifications 1 through 4. So, in essence, you are sentencing the accused for specifications 1 through 4 under Charge I, and also the information in specification 5 to include the fraternization.

---

The first question to be addressed is whether the convictions under Charge I and Charge II arose from the same act or transaction. *See* para. 74*b* (4), Manual for Courts-Martial, United States, 1969 (Revised edition). The findings of guilty reveal that the time, place, and conduct in each specification of Charge I are identical to that found in the corresponding specification of Charge II. In these circumstances, an issue of multiplicity for findings is

clearly raised. *See United States v. Baker, supra.*

The next question we must address is whether Congress intended appellant to stand convicted of an Article 134 offense and an Article 133 offense arising from the same act or transaction. Article 44, UCMJ, 10 U.S.C. § 844; *Brown v. Ohio, supra,* and *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). Examination of the legislative history of these two codal provisions reveals no clearly expressed legislative intent on this question.[2] *See Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *cf. Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535 (1983). The Government suggests that such an intent is expressed in paragraph 212, Manual, *supra,* and is binding on this Court as a result of Article 36, UCMJ, 10 U.S.C. § 836. We disagree.

Paragraph 212, Manual, *supra,* explains Article 133 in terms of the procedure required to prove such an offense. In pertinent part, it states:

This article includes acts made punishable by any other article, provided these acts amount to conduct unbecoming an officer and a gentleman. Thus a commissioned officer who steals property violates both this article and Article 121.

\* \* \* \* \* \*

Whenever the offense charged is the same as a specific offense set forth in the manual, the elements of proof are the same as those set forth in the paragraph which treats that specific offense, with the additional requirement that the act or omission constitutes conduct unbecoming an officer and gentleman.

We agree that a single act may *violate* both statutes. *See Missouri v. Hunter, supra* at 679. We do not believe, however, that both convictions must stand. *Cf.* para. 74*b* (4), Manual, *supra.* Such a broad construction of this manual provision in terms of substantive criminal law (*see Missouri v.*

**2.** *See* Hearings on H.R. 2498 Before a Subcomm. of the House Armed Services Committee, 81st Cong., 1st Sess. 1235 (1949), *reprinted* in *Index and Legislative History, Uniform Code of Military Justice.*

*Hunter, supra*; *Albernaz v. United States*, 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981)), is not only unjustified by the above language but exceeds the legitimate procedural purpose of this provision. *See Parker v. Levy*, 417 U.S. 733, 785 n. 36, 94 S.Ct. 2547, 2575 n. 36, 41 L.Ed.2d 439 (1974) (Stewart, J., dissenting); *see also* Article 44.

The Government has offered this Court no additional authority which directly supports its broad interpretation of paragraph 212, Manual, *supra*. We note that Colonel Winthrop addressed the problem of charging an accused with the same conduct under a specific article and the general article prohibiting conduct unbecoming an officer. He generally discouraged the practice except where serious doubt existed as to whether the offense is one of a class contemplated by the specific article. *See* W. Winthrop, *Military Law and Precedents* 143, 148–49, 719 (2d ed. 1920 Reprint). As for findings, he generally opined that conviction for a lesser-included offense should be resorted to only when the greater offense charged was not proved beyond a reasonable doubt. *Id.* at 383–85, 719.

Prior to 1951 and the advent of the Uniform Code of Military Justice, the predecessor of Article 133 was Article of War 95. It stated, "Any officer or cadet who is convicted of conduct unbecoming an officer and a gentleman shall be dismissed from the service." Manual for Courts-Martial, U.S. Army, 1928, contained the following note:

Offenses under A. W. 95 and A. W. 96 are not the same, nor established by the same evidence, the former being applicable to officers and cadets; and the conviction of an officer under both articles on the same facts held not illegal as placing him twice in jeopardy for the same offense. (*McRae v. Henkes*, 273 F. 108.) (Dig.J.A.G.1922, p. 118.)

This note was repeated in Manual for Courts-Martial, U.S. Army and U.S. Air Force, 1949, except for the citation to Dig. J.A.G. On its face, this is some authority for the Government's argument in this case. However, on closer examination, we find that it, too, is unpersuasive.

In *McRae v. Henkes*, 273 F. 108 (8th Cir. 1921), the Government appealed an order issued by a federal district judge discharging a military prisoner on a writ of habeas corpus from a military prison. In pertinent part, this Court of Appeals said:

There were three specifications under each charge, consisting of three letters written by appellee of dates May 26, June 29, and October 10, in 1917. That is, the three specifications under the charge of violating the 95th article were identical with those under the charge of violating the 96th article; and it is alleged in the petition for the writ that inasmuch as the specifications set up the same facts to be proved under each charge, this operated to put the petitioner twice in jeopardy for the same offense. Only an officer or cadet can commit the offense named in the 95th article. It reads:

"An officer or cadet who is convicted of conduct unbecoming an officer and a gentleman shall be dismissed from the service."

It exacts conduct becoming both an officer and a gentleman. We appreciate the high requirement and purpose of the article and understand in a broad sense the offense, but confess a lack of knowledge of its definite limitations, and also admit a superior capacity in the military court over the civil to deal with it. The same comments and admission go to the 96th article, though it is broader in scope than the 95th. As to persons, it includes every one subject to military law, as to the offense, "all disorders and neglects to the prejudice of good order and military discipline, all conduct of a nature to bring discredit upon the military service" are covered, and as to the punishment, that on conviction is left to the discretion of the court. An excerpt from *Dynes v. Hoover*, 20 How. 65, 82 (15 L.Ed. 838), is apt:

"Notwithstanding the apparent indeterminateness of such a provision, it is

not liable to abuse; for what those crimes are, and how they are to be punished, is well known by practical men in the navy and army, and by those who have studied the law of courts-martial, and the offenses of which the different courts-martial have cognizance. With the sentences of courts-martial which have been convened regularly, and have proceeded legally, and by which punishments are directed, not forbidden by law, or which are according to the laws and customs of the sea, civil courts have nothing to do, nor are they in any way alterable by them. If it were otherwise, the civil courts would virtually administer the rules and articles of war, irrespective of those to whom that duty and obligation has been confided by the laws of the United States."

But, as a question of pleading, it is very clear to us that the two charges are not one and the same offense. Furthermore, that was a question in procedure, not of jurisdiction, and which the court-martial, having obtained jurisdiction, was competent to decide. *Ex parte Bigelow*, 113 U.S. 328, 5 Sup. Ct. 542, 28 L.Ed. 1005; *In re Eckart*, 166 U.S. 481, 17 Sup. Ct. 638, 41 L.Ed. 1085; *Rose ex rel. v. Roberts*, 99 Fed. 948, 40 C. C. A. 199. Our answer to the other element embodied in the contention is: *Gavieres v. U.S.*, 220 U.S. 338, 31 Sup. Ct. 421, 55 L.Ed. 489. Here, as there, it was necessary to establish a fact under one charge not required under the other. Conviction could not be had under the 95th article, unless it be proven that defendant is an officer. No such proof is needed under the 96th. *See also Carter v. McClaughry*, ... [183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236].

There was error in discharging appellee.

Reversed.

273 F. at 112–13.

Examination of the rationale of this opinion reveals several points which lead us to discount the precedential value of this decision. First, that civilian court expressly admitted its lack of knowledge concerning the general articles and the expertise of the military court to deal with questions concerning them. Since our Court was established for precisely this purpose by Congress, we need not be bound by this decision. *See Noyd v. Bond*, 395 U.S. 683, 694, 89 S.Ct. 1876, 1882, 23 L.Ed.2d 631 (1969). Second, the Court of Appeals chose to primarily view the double-jeopardy question raised in that case as one of procedure, whereas the present Supreme Court has viewed this question in terms of the substantive criminal law-making power of Congress. *See Missouri v. Hunter, supra.* Third, the Eighth Circuit expressly relied on the fact that the Article 95 offense required proof that the accused was an officer, while the Article 96 offense did not. The test today is whether each statutory offense requires proof of a fact which the other does not. *See generally Albernaz v. United States, supra*, 450 U.S. at 340, 101 S.Ct. at 1142; *Whalen v. United States, supra*, 445 U.S. at 704–06, 100 S.Ct. at 1444–45 (Rehnquist, J., dissenting). Finally, we note that the offense of disorder or neglect under Article 134 and its predecessors has traditionally been considered a lesser-included offense of conduct unbecoming an officer under Article 133 and its predecessors. *See Winthrop, supra* at 383–85, 719.

Accordingly, we are confronted with a situation where there is no clearly expressed legislative intent that convictions under both statutes for the same conduct should be sustained. *See Whalen v. United States, supra*; *cf. Missouri v. Hunter, supra.* In this situation, we must apply the rule of statutory construction stated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), to discern Congress' intent. *See Albernaz v. United States* and *Whalen v. United States*, both *supra.*

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine

whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Missouri v. Hunter, supra*, 103 S.Ct. at 678, quoting from *Blockburger v. United States, supra*, 284 U.S. at 304, 52 S.Ct. at 182. A lesser-included offense does not meet this test for double-jeopardy purposes. *See Brown v. Ohio, supra*, 432 U.S. at 169, 97 S.Ct. at 2227; *United States v. Baker, supra* at 368–69.

Turning to the elements of these offenses, we find that there was only one difference.[3] To convict appellant of the Article 134 offenses, the Government was required to show her conduct was under the circumstances prejudicial to good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. To convict appellant of the Article 133 offenses, the Government was required to show that the same conduct was unbecoming an officer and gentlewoman. In

view of the military judge's instructions defining these elements of proof and the traditional relationship of these offenses as a matter of military law,[4] we have little difficulty in concluding that the disorder or discredit element of Charge I is necessarily included within the element of disgrace required by Charge II. The fact that the same evidence was used to establish both types of offenses confirms our conclusion. That something more was required for conviction under Article 133 does not undermine this greater-lesser relationship in the present case, and the Government does not contend otherwise.

The decision of the United States Air Force Court of Military Review is reversed as to Charge I and its specifications. The findings of guilty of that Charge and its specifications are set aside and that Charge and its specifications are dismissed. The decision to affirm the remaining findings of guilty[5] and the sentence is affirmed.[6] *See*

3. To determine whether one offense is a lesser-included offense of another, the lesser offense must be shown to require no proof beyond that which is required for conviction of the greater offense. *See Brown v. Ohio*, 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977). Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, as do many other codal provisions, broadly applies to any accused who was "subject to this chapter" at the time of the offense. This language is identical to the general personal jurisdiction prerequisite for the trial of any offense under the Code, including an Article 133 offense. *See* Articles 2, 17, and 18, UCMJ, 10 U.S.C. §§ 802, 817, and 818, respectively. Accordingly, the officer element of the Article 133 offense may be viewed as an additional element of proof over and above that required for an Article 134 offense. In this light, we find it impossible to conclude that the above language from Article 134 requires proof beyond that required of Article 133. *See generally* H. Moyer, *Justice and the Military* §§ 5–230 through 5–233 (1972).

4. The genesis of the doctrine of lesser-included offenses as a matter of military law is found in the sanctioned practice of convicting an accused of conduct to the prejudice of good order and military discipline when the same conduct has not been shown, as charged, to rise to the level of conduct unbecoming an officer. *See* W. Winthrop, *Military Law and Precedents* 383–85, 719 (2d ed. 1920 Reprint); *see also Swaim v. United States*, 165 U.S. 553, 17 S.Ct. 448, 41 L.Ed. 823 (1897). This Court has not expressly decided

this question, although we have affirmed a conviction of a Article 134 offense which was originally charged as a violation of Article 133. *United States v. Underwood*, 10 U.S.C.M.A. 413, 27 C.M.R. 487 (1959). *See United States v. Walters*, 11 C.M.R. 355 (A.B.R. 1953). Early board of review decisions indicate that this is elementary military law. *See United States v. Jackson*, 12 C.M.R. 403 (A.B.R.), *pet. denied*, 3 U.S.C.M.A. 836, 13 C.M.R. 142 (1953); *United States v. Loney*, 8 C.M.R. 533 (A.B.R. 1952), *pet. denied*, 2 U.S.C.M.A. 678, 8 C.M.R. 178 (1953); *United States v. Lee*, 4 C.M.R. 185, 191 (A.B.R.), *pet. denied*, 1 U.S.C.M.A. 712, 4 C.M.R. 173 (1952). We agree and further conclude that if an accused is convicted at a court-martial of both offenses based on the same act or transaction, the lesser-included offense under Article 134 must be dismissed. *See Brown v. Ohio, supra*; *United States v. Baker*, 14 M.J. 361 (C.M.A. 1983).

5. The issue specified for review does not pertain to specification 5 of Charge II and counsel does not argue that it is multiplicious for findings with specifications 1 through 4 of Charge II. Examination of the specifications does not indicate that affirming this specification is plain error. *See United States v. Holt*, 16 M.J. 393 (C.M.A. 1983).

6. For some reason, not apparent to this Court, the members were instructed to sentence appellant on the basis of the lesser-included offenses in Charge I. No prejudice could inure to appel-

*United States v. Allen*, 16 M.J. 395, 396 (C.M.A. 1983).

EVERETT, Chief Judge (concurring):

lant on this basis. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

*See* my concurring opinion in *United States v. Timberlake*, 18 M.J. 371 (C.M.A. 1984).