### UNITED STATES

v.

### Major Terry E. ARTHEN, 444–52–9155 FR, United States Air Force.

### ACM 28590.

U.S. Air Force Court of Military Review.

Sentence Adjudged 4 April 1990.

Decided 21 Dec. 1990.

---

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair, Lieutenant Colonel Jeffrey R. Owens, Major Ronald G. Morgan, Captain Paul M. Dankovich.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Major Brenda J. Hollis and Captain Leonard R. Rippey.

Before LEONARD, RIVES and McLAUTHLIN, Appellate Military Judges.

## OPINION OF THE COURT

LEONARD, Senior Judge:

Major Terry Arthen pleaded guilty to and was convicted of conduct unbecoming an officer by maintaining a romantic relationship with an airman and treating him on terms of military equality. She was also convicted of adultery with the same airman. Her approved sentence is dismissal from the service. We find appellant's guilty plea to the offense of conduct unbecoming an officer to be improvident.

Until her conviction, Major Arthen had over 12 years of outstanding service as a nurse. Her problems began when she became romantically involved with Airman First Class Daniel J. Hailand. At the time of this involvement, appellant was serving as the chief or charge nurse for a multi-service surgical and medical section of the hospital at McConnell Air Force Base, Kansas. Hailand was assigned to the same hospital as a medical specialist in the surgi-

cal clinic. Although appellant was married to a civilian, she began dating Hailand in December 1988. Eventually, their relationship evolved into a love affair that included sexual intercourse.

Appellant worked with Hailand on the Hospital Health Promotions Board. The purpose of the Board was to promote healthful activities and food in the McConnell Air Force Base community. On 19 September 1989, appellant was sent to Carswell Air Force Base, Texas on a temporary duty (TDY) assignment concerned with health promotions. Hailand took leave and joined her in the Dallas–Fort Worth area where they engaged in sexual intercourse at an off-base location.

Some of appellant's activities with Hailand occurred in the presence of other military personnel assigned to the hospital; each of these individuals was also involved in officer-enlisted romantic relationships. Appellant and Hailand spent several nights together and engaged in sexual intercourse at the home of Captain and Staff Sergeant (SSgt) Jackimczuk, an officer-enlisted married couple. Major William Cottrell and Staff Sergeant Tammy Duncan were other witnesses to some of appellant's activities with Hailand. Cottrell and Duncan were also lovers and Cottrell was subsequently tried by court-martial for his fraternization with Duncan. Duncan was Hailand's immediate supervisor.

Appellant told all four of these individuals that she loved Hailand and that they planned to marry. The sexual activities appellant and Hailand engaged in at the home of the Jackimczuks were private, consensual, and non-deviate. During one of the occasions, Cottrell and Duncan also spent the night together at the Jackimczuk's. Appellant hugged and kissed Hailand at the Jackimczuk home in the presence of the Jackimczuks, Cottrell, and Duncan. On one occasion, at an unspecified location, Duncan overheard appellant tell Hailand that she loved him and that he was the best lover she ever had.

The hospital commander heard rumors of appellant's relationship with Hailand and twice counseled appellant about this conduct. At the second counselling session, he advised her to "disengage from any further dealings" with Hailand.

Thereafter, appellant was observed hugging, kissing, and holding hands with Hailand in the Tinker Air Force Base Exchange in October 1989. They were not in uniform; however, the conduct was observed by another nurse assigned to the McConnell Hospital who happened to be shopping at the Tinker Exchange. This nurse reported what she saw to the hospital commander, and he ultimately preferred court-martial charges.

At her trial, appellant entered guilty pleas and the military judge conducted a providency inquiry. During that inquiry, appellant admitted that she knew that her conduct with Hailand was wrong and improper and that it wrongfully, dishonorably, and disgracefully compromised her character and standing as an officer and gentlewoman. However, she also stated that she was aware of a rumor that a prior commander of the hospital had been involved in an adulterous relationship and had not been tried or administratively separated. She further stated that she was aware of other similar activity by other hospital personnel that had gone unpunished.

The specification alleging appellant's Article 133, UCMJ, 10 U.S.C. § 933, conduct unbecoming offense did not allege that she was the commander or supervisor of Hailand.[1] It only alleged that Hailand was

---

1. That specification alleged: In that Major Terry E. Arthen, United States Air Force, 384th Strategic Hospital, did, in or near the State of Kansas from, on or about 1 May 1988 to on or about 30 October 1989, wrongfully, dishonorably and disgracefully compromise her character and standing as an officer and a gentlelady by treating on terms of military equality and maintaining a romantic relationship with A1C Daniel J. Hailand, her military subordinate in the 384th Strategic Hospital; by sleeping in the same bed with A1C Daniel J. Hailand at the homes of other military subordinates; by hugging, kissing and holding hands with A1C Daniel J. Hailand and telling him that she loved him in the presence of other military subordinates, and in the homes of military subordinates; and by telling A1C Daniel J. Hailand that she loved A1C Daniel J.

"her military subordinate in the 384th Strategic Hospital." Further, other than her admission that they "worked with" each other on the Health Promotions Board, there was no evidence of any kind of a supervisory relationship between appellant and Hailand.

The issues presented by appellant's case are whether the charge alleging she engaged in conduct unbecoming an officer constituted an offense and, if it did, whether her plea admitted sufficient facts to establish guilt of that offense. The resolution of these issues lies in whether appellant was properly charged with and convicted of fraternization under the holdings of *United States v. Johanns*, 17 M.J. 862 (A.F.C.M.R.1983), *aff'd*, 20 M.J. 155 (C.M.A.1985), *United States v. Wales*, 31 M.J. 301 (C.M.A.1990), *United States v. Appel*, 31 M.J. 314 (C.M.A.1990), and *United States v. Parrillo*, 31 M.J. 886 (A.F.C.M.R. 1990).

■ If the Article 133 specification does not state an offense in the Air Force, appellant's plea of guilty would not waive this defect. *United States v. Lumagui*, 31 M.J. 789 (A.F.C.M.R.1990); R.C.M. 905(e); R.C.M. 907(b)(1)(B); *accord*, Mil.R.Evid. 103(a). Further, if appellant's plea did not admit sufficient facts to make her plea provident, this court is required to set aside her conviction. *United States v. Davenport*, 9 M.J. 364 (C.M.A.1980); *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969); Article 45(a), UCMJ, 10 U.S.C. § 845(a); R.C.M. 910(c)(5) and (e).

The government contends that appellant was not convicted of fraternizing with Hailand and, therefore, the rationale of *Johanns*, *Wales*, *Appel*, and *Parrillo* does not apply to her case. They argue appellant was convicted of a violation of Article 133, UCMJ, and convictions under this article only have to prove:

(1) That the accused did or omitted to do certain acts; and (2) That, under the circumstances, these acts or omissions constituted conduct unbecoming an officer and gentleman.

MCM, Part IV, paragraph 59b (1984).

■ Unfortunately, the government's position ignores the explanation of this provision, which provides:

Whenever the offense charged is the same as a specific offense set forth in this Manual, the elements of proof are the same as those set forth in the paragraph which treats that specific offense, with the additional requirement that the act or omission constitutes conduct unbecoming an officer and a gentleman.

MCM, Part IV, paragraph 59c(2) (1984). Therefore, when the government elects to charge what traditionally has constituted fraternization under Article 133 rather than under Article 134, 10 U.S.C. § 934, they have gained an element rather than eliminating any. *Parrillo*, 31 M.J. at 890; *see also United States v. Court*, 24 M.J. 11 (C.M.A.1987); *United States v. Ramirez*, 21 M.J. 353 (C.M.A.1986); *United States v. Timberlake*, 18 M.J. 371 (C.M.A.1984); *United States v. Rodriquez*, 18 M.J. 363 (C.M.A.1984).

As Judge Miller observed in the original *Johanns* case, the government rarely labels fraternization cases with the specific term "fraternization."[2] However, the government does not have to specifically allege "fraternization" in order to be bound to prove the same. *Johanns*, 20 M.J. at 160–161. Further, alleging a fraternization offense under Article 133 does not magically convert the offense to some other offense that has any lesser requirement of proof. *Johanns*, 20 M.J. at 161.

■ In determining whether appellant's charge is fraternization, we will perform an analysis similar to that performed by Judge Brown in determining whether Wan-

---

Hailand and that he was the best lover she ever had, said comments uttered in the presence of SSgt Tammy R. Duncan, A1C Hailand's immediate supervisor.

**2.** Judge Miller's extensive survey of fraternization cases revealed that 227 of the 238 cases

reported never used the generic term "fraternization" or a derivative thereof in the allegation. *United States v. Johanns*, 17 M.J. 862, 880–882 (A.F.C.M.R.1983) (Miller, J., concurring in part and dissenting in part).

da Jo Mercer was an Employee Retirement Income Security Act fiduciary in the case of *Donovan v. Mercer.* He reasoned that: "If it Talks Like a Duck and Walks Like a Duck ... It is a Duck." *Donovan v. Mercer,* 747 F.2d 304, 306; 5 E.B.C. 2512, 2514 (5th Cir.1984). Our test will be: If it looks like fraternization and the parties treated it like fraternization, it is fraternization.

■■■ What does the offense look like? We conclude it looks like fraternization. Turning to the specification, it is clear that the offense described in this case is an officer treating an enlisted person "on terms of military equality" by doing certain acts with the enlisted person. The phrase "on terms of military equality" is the "catch phrase" that succinctly expresses the wrongfulness of the conduct engaged in by an officer who "fraternizes" with an enlisted member. MCM, Part IV, paragraph 83b(2) (1984).

The specification, as alleged, contains all the elements of a traditional fraternization specification except an allegation that the "fraternization violated the custom of the accused's service that officers shall not fraternize with enlisted members on terms of military equality." MCM, Part IV, paragraph 83b(4) (1984). Failure of the specification to allege a "custom of the service" element does not prevent us from determining that appellant's offense was fraternization. As we stated in *Parrillo,* when offenses are charged under Article 133 or 134, UCMJ, the government must establish that an accused was on fair notice of the criminality of his or her conduct. 31 M.J. at 891; *see also Parker v. Levy,* 417 U.S. 733, 755, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974); *Johanns,* 20 M.J. at 158. In the absence of a regulation prohibiting the alleged conduct, the notice must come from a custom of the service that is violated. *Appel,* 31 M.J. at 320, *Johanns,* 20 M.J. at

158–161; *Parrillo,* at 891. Therefore, even though it was not specifically alleged in appellant's Article 133 specification, she cannot be found guilty of the alleged offense unless her conduct violated a custom of the Air Force.

Did the parties at trial treat appellant's offense as fraternization? We find that they did. The military judge's explanation of the offense during the providency inquiry permits no other conclusion. He described the "duck" as follows:

[Y]ou were a commissioned officer of the Air Force and assigned with the 384th Strategic Hospital;

... Airman First Class Daniel J. Hailand was an Air Force enlisted man;

... [Y]ou then knew that Airman First Class Daniel J. Hailand was an Air Force enlisted man;

... Airman First Class Hailand was then a subordinate of your organization, the 384th Strategic Hospital;

... [Y]ou wrongfully and unlawfully treated Airman First Class Hailand on terms of military equality and maintained a romantic relationship with him by sleeping in the same bed with him at the homes of other military subordinates, by hugging and kissing and holding hands with him and telling him that you loved him in the presence of other military subordinates in the homes of military subordinates, and by telling Airman First Class Hailand that you loved him and that he was the best lover you ever had, said comments uttered in the presence of Staff Sergeant Tammy R. Duncan, Airman First Class Hailand's immediate supervisor; [3]

... [S]uch conduct by you dishonorably —wrongfully, dishonorably, and disgracefully compromised your character and standing as an officer and gentlelady;

---

**3.** The military judge treated appellant's statement to Hailand that she loved him and he was the best lover she ever had as one of the examples of appellant treating Hailand on terms of military equality. If this statement had been made directly to a third party, instead of being overheard by a third party, it may have qualified for treatment as an Article 133, UCMJ,

offense independent of fraternization. *Cf. United States v. Tedder,* 24 M.J. 176 (C.M.A.1987) (officer asking enlisted subordinates to get him dates with a female enlisted subordinate); *United States v. Shober,* 26 M.J. 501 (A.F.C.M.R. 1986) (officer telling others about his relationship with a waitress and showing nude photographs).

And the final element is that, under the circumstances, your conduct was unbecoming an officer and gentlelady.

In his explanation, the only element of fraternization that the military judge omitted was "that such fraternization violated the custom of the accused's service that officers shall not fraternize with enlisted members on terms of military equality." MCM, Part IV, paragraph 83b (1984). Further, he was not alone in his characterization of the offense as "fraternization." When the parties were discussing the maximum punishment applicable to the offenses, the trial counsel stated: "Your honor, we see that the 133 specification there to be closely aligned with a fraternization specification."

Having found that the offense looks like fraternization and the parties treated it as fraternization, we find that appellant's Article 133 offense alleged she was fraternizing with Hailand. Now we must determine if appellant providently pleaded guilty to conduct that constituted a fraternization offense in violation of a custom of the Air Force. We find that she did not.

In *Parrillo*, we found a custom of the service in the Air Force which prohibits an officer from fraternizing with an enlisted person under his command or supervision. 31 M.J. at 891. We found there were sufficient facts present in *Parrillo*, a not guilty plea case, to prove Parrillo's notice of the existence of the custom. *Id.* at 892. We also found this custom to be consistent with our prior holding in *Johanns* that there is no Air Force custom of the service to support criminal prosecution of fraternization unless there is a supervisory or command relationship between the officer and enlisted person involved. *Id.* at 891; 17 M.J. at 869. Further, we found this custom was not contrary to United States Court of Military Appeals cases affirming and interpreting *Johanns*. *See Wales*, 31 M.J. at 307; *Appel*, 31 M.J. at 321; *Johanns*, 20 M.J. at 161.

Appellant, unlike Lieutenant Parrillo, pleaded guilty to her fraternization offense. The *Appel* Court addressed the requirement of proving the violation of a custom against fraternization when a guilty plea is entered. That Court held that there must be proof at trial of the existence and notice of the custom that has been violated. 31 M.J. at 320. Further, the record must show "undisputed facts" sufficient to establish a violation of an Air Force custom against an officer fraternizing with an enlisted person he commands or supervises. 31 M.J. at 320, 321. Proof of the existence, notice and violation of the custom were found to be present in Appel's admissions during his providency inquiry and other evidence before the trier of fact. *Id.*

*Appel* also identified a test to determine whether a supervisory relationship exists which is sufficient to bring conduct within the prohibition of the custom against an officer fraternizing with an enlisted person the officer supervises:

> [T]here must be a duty relationship which regularly or recurringly calls for or may call for direction, oversight, correction or evaluation of the enlisted member by the officer. It is not required that there be a formal supervisory or command relationship between the two ...

31 M.J. at 317.

■ Appellant's stipulation and her admissions to the military judge fall far short of "undisputed facts" of such a supervisory relationship. Appellant admitted she "worked with" Hailand on the hospital Health Promotion Board. This was her only admission of a working relationship with her lover. She admitted no supervisory or command relationship of any nature. Further, the government failed to allege or offer any proof of such a relationship.

■ Even if a supervisory relationship had been proven in this case, proof of appellant's notice of a custom of the Air Force may be lacking. The government relied upon appellant's admissions and stipulations and made no effort to introduce any other evidence of appellant's notice of a custom prohibiting her conduct with Hailand. Unlike *Appel*, appellant's admissions and the evidence in her case do not provide

"undisputed facts" of her notice of an Air Force custom against fraternization. *See* 31 M.J. at 320, 321. Contrary to her stipulation and admission of disgrace and dishonor,[4] she also stipulated and admitted that she was aware that no court-martial action had resulted from an adulterous affair of a prior commander of her hospital, and that she was aware that others in the hospital were engaging in conduct similar to hers without action being taken. Further, the other evidence showed that appellant's circle of co-worker associates were all either enlisted-officer marriages or officer-enlisted dating relationships. Therefore, the evidence at appellant's trial was contradictory, rather than "undisputed," as to whether she was on notice that her conduct was violating a custom of the Air Force.

In conclusion, we find appellant's conviction of Specification 1 of Charge I was based upon an improvident plea of guilty and that conviction is set aside. A rehearing may be held on the offense.

In addition to the specification we have set aside, appellant pleaded guilty to and was found guilty of adultery. We find that plea provident.

Having set aside one of two offenses of which appellant was convicted, we must now determine, if the convening authority elects not to retry the fraternization offense, whether appellant's sentence may be reassessed or a rehearing on sentence is necessary. In making that determination, we find important the military judge's treatment of the offenses for punishment purposes. The parties agreed that the Article 133, UCMJ, offense was fraternization for determination of punishment and the military judge treated the two offenses as multiplicious for sentencing. He then found the maximum punishment to be a dismissal, forfeiture of all pay and allowances, and confinement for two years.

The Manual for Courts–Martial provides a maximum punishment for fraternization of a dismissal, forfeiture of all pay and allowances, and confinement for two years. MCM, Part IV, paragraph 83e (1984). Adultery, on the other hand, calls for a maximum punishment of a dismissal, forfeiture of all pay and allowances, and confinement for one year. MCM, Part IV, paragraph 62e (1984).

In order to reassess appellant's sentence, we must be able to decide accurately what sentence would have been adjudged by her court-martial if she had only been convicted of adultery. *United States v. Peoples*, 29 M.J. 426, 428 (C.M.A.1990). We find that we cannot determine "with the requisite degree of certainty" that appellant would have been sentenced to a dismissal under those circumstances. 29 M.J. at 428. Her outstanding prior record and the substantial difference in maximum punishment between adultery and fraternization may well have resulted in a lesser punishment.

Appellant's conviction of adultery is affirmed. Her conviction of fraternization under Article 133, UCMJ, and her sentence is set aside. A rehearing may be held on Specification 1 of Charge I and on sentence.

Judges RIVES and McLAUGHLIN concur.

---

4. This admission was to the extra element imposed by Article 133, UCMJ, and was not necessarily an admission of notice or violation of a custom of the Air Force against fraternizing. *See Parrillo,* at 891.